IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Steve Schmelzer, et al.,

    Plaintiffs,

    v.                        Case No. 2:16-cv-134

Huntington Bancshares
Financial Corporation,

    Defendant.

OPINION AND ORDER

    This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., by plaintiffs BBU Environmental Services Cash Balance Plan ("the Plan") and Steve Schmelzer ("Schmelzer"), a participant in and fiduciary of the Plan, against Huntington Bancshares Financial Corporation ("Huntington").[1] Plaintiffs allege that the Plan is a single-employer pension plan maintained by BBU Environmental Services, LTD ("BBU"), and that the Plan is an ERISA plan which went into effect on January 1, 2010. Complaint, ¶ 4. Plaintiffs further allege that Huntington is a plan trustee and fiduciary; that Huntington exercises discretionary authority and control with respect to Plan management and the distribution of Plan assets; and that Huntington renders investment advice for a fee. Complaint, ¶ 8.

    Plaintiffs allege that on or about December 28, 2012, Huntington extended a loan to Ben Cook ("Cook"), a BBU employee and

---

[1] The Huntington National Bank states in its motion to dismiss that it served as a trustee of the Plan, not Huntington Bancshares Financial Corporation, the entity erroneously styled as the defendant in the complaint. See Doc. 3, p. 2 n.1.

Plan fiduciary, in the amount of $50,000. Complaint, ¶¶ 12, 14. This loan of funds from Plan assets was made pursuant to the terms of a Plan amendment which also took effect on December 28, 2012. Complaint, Ex. D. The terms of the loan required sixty monthly payments of $926.48. Complaint, ¶ 16. The loan was secured by an assignment executed by Cook, pledging fifty percent of the present value of his vested accrued benefit to the Plan. Complaint, ¶ 17. Cook made loan payments through April of 2013. Complaint, ¶ 18. Plaintiffs further allege that later in 2013, Cook requested to withdraw his benefits from the Plan in a lump sum payment upon his separation from his employment, and that Huntington distributed the sum of $359,325.20 to Cook on June 3, 2013. Complaint, ¶ 20-21.

In Count 1 of the complaint, plaintiffs allege prior to the distribution of the funds in Cook's account, Huntington should have deducted $46,986.45, the amount owed on the loan at that time, from the lump sum withdrawal. Complaint, ¶¶ 24-25. Plaintiffs allege that the failure to do so constituted a breach of Huntington's fiduciary duty to the Plan in violation of 29 U.S.C. §1104(a), and that Huntington is liable to plaintiffs for the loss of principal, interest and costs. Complaint, ¶¶ 28-31. In Count 2 of the complaint, plaintiffs allege that Huntington had knowledge of the loan to Cook, a co-fiduciary. Complaint, ¶ 34. Plaintiffs further allege that Huntington had knowledge of a breach of fiduciary duty by Cook, and is liable for that breach under 29 U.S.C. §1105(a)(1)-(3) as a co-fiduciary. In Count 3, plaintiffs seek to remove Huntington as a Plan fiduciary pursuant to 29 U.S.C. §1109(a). Complaint, ¶¶ 38-39. In Count 4, plaintiffs seek to recover attorney fees. Complaint, ¶ 42.

This matter is before the court on Huntington's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.

I. Motion to Dismiss Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678. Where the facts pleaded do not permit

3

the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2).  Id. at 679.

In ruling on a motion to dismiss, the court may consider documents which are attached to the complaint.  See Fed.R.Civ.P. 10(c)("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); Commercial Money Center, Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007)(documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss).

"'[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'"  Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012)(quoting N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998)).  "'[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[.]'"  Id. (quoting Nat'l Assoc. of Minority Contractors, Dayton Chapter v. Martinez, 248 F.Supp.2d 679, 681 (S.D. Ohio 2002)).  See also Harper v. U.S. Attorney for Eastern Dist. of Tenn., 802 F.2d 458 (table), 1986 WL 16081 (6th Cir. 1986)(affirming dismissal of action where exhibit attached to complaint was contrary to allegations in the complaint and defeated the claim for relief); Consolidated Jewelers v. Standard Financial Corp., 325 F.2d 31, 36 (6th Cir. 1963)(upholding dismissal where pleadings were inconsistent with the clear and unambiguous language of the contract attached to the complaint as an exhibit); Mengal Co. v. Nashville Paper Products and Specialty Workers Union, No.

4

513, 221 F.2d 644, 647 (6th Cir. 1955)(where inconsistent with the allegations of the complaint, the exhibit, a collective bargaining contract, controlled). Mere legal conclusions and factual allegations in the complaint which are contradicted by a document properly before the court on a motion to dismiss "are not well-pleaded facts that the court must accept as true." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997).

These cases are particularly apropos in the context of an ERISA action. ERISA "is built around reliance on the face of written plan documents." US Airways, Inc. v. McCutchen, ___ U.S. ___, 133 S.Ct. 1537, 1548 (2013)). "A primary purpose of ERISA is to ensure the integrity and primacy of the written plans." Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997). The written ERISA plan documents govern the rights and benefits of ERISA plan beneficiaries. Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A., 770 F.3d 414, 425 (6th Cir. 2014). Thus, it is appropriate to "recognize the superiority of the written plan documents[,]" id., in ruling on a motion to dismiss. See Kling v. Fidelity Management Trust Co., 270 F.Supp.2d 121, 128 (D. Mass. 2003)(plan documents could be considered in ruling on motion to dismiss breach of fiduciary claim, noting that "ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents").

## II. Plaintiffs' Claims

### A. Breach of Fiduciary Duty Claim

#### 1. Summary

In Count 1, plaintiffs allege that Huntington breached a

fiduciary duty by distributing the entire amount of Cook's Plan account instead of withholding funds sufficient to cover the amount owed by Cook on his loan. Huntington argues that the complaint fails to allege facts sufficient to show that it had any fiduciary responsibilities with regard to administering the loan program, including ensuring that sufficient account assets remained to serve as collateral for the loan. Huntington further contends that provisions in the Plan documents contradict the allegations in the complaint and show that it is not a fiduciary of the Plan's loan program.

2. Standards for Breach of Fiduciary Duty

Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A). A fiduciary within the meaning of ERISA is someone acting in the capacity of manager, administrator, or financial adviser to a plan. Pegram v. Herdrich, 530 U.S. 211, 222 (2000).

A functional test is employed to determine fiduciary status. Briscoe v. Fine, 444 F.3d 478, 486 (6th Cir. 2006); see also Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993)(ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan"); DeLuca v. Blue

Cross Blue Shield of Michigan, 628 F.3d 743, 747 (6th Cir. 2010)(same). A person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he performs one of the described functions. Hamilton v. Carell, 243 F.3d 992, 998 (6th Cir. 2001); see also Pfahler v. National Latex Products Co., 517 F.3d 816, 830 (6th Cir. 2007)(for a fiduciary to be held liable, he must have been acting in a fiduciary capacity when taking the challenged action). The threshold question is not whether the actions of a person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary, that is, was performing a fiduciary function, when taking the action subject to the complaint. Pegram, 530 U.S. at 226. The same entity may function as an ERISA fiduciary in some contexts but not in others. Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 192 (4th Cir. 2002). An administrator or manager of the plan is a fiduciary only "to the extent" that he exercises discretionary authority, control, or responsibility respecting the management of the plan, the disposition of its assets, or the administration of the plan. Pegram, 530 U.S. at 225-226; §1002(21)(A). Thus, it is necessary to ask whether a person is a fiduciary with respect to the particular activity in question. Briscoe, 444 F.3d at 486.

Persons performing administrative and ministerial functions are not fiduciaries. Id. at 488 (entity which performed administrative and ministerial tasks that did not involve the exercise of discretionary authority was not a fiduciary). See also Flacche v. Sun Life Assur. Co. of Canada (U.S.), 958 F.2d 730, 734 (6th Cir. 1992)(mere payment of claims is insufficient to give

7

discretionary control over the management of plan assets or the administration of the plan; defendant company which performed only ministerial functions for the plan was not acting as a fiduciary when it mistakenly calculated plaintiff's retirement benefits); Baxter v. C.A. Muer Corp., 941 F.2d 451, 455 (6th Cir. 1991)(person without power to make plan policies or interpretations and who performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits is not a fiduciary under ERISA).

Department of Labor regulations provide that persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, and who perform purely ministerial functions such as "(6) [c]alculation of benefits[,]" and "(10) [p]rocessing of claims[,]" are not fiduciaries. 29 C.F.R. §2509.75-8(D-2). Only persons who perform the functions described in §1002(21)(A) with respect to an employee benefit plan are fiduciaries. §2509.75-8 (D-2).

3. Plan Documents and Exhibits to the Complaint

The Plan, Complaint Exhibit A, is an agreement between BBU (referred to as the "Employer") and Schmelzer and Cook (referred to as the "Trustee[s]"), which was effective January 1, 2010. Plan, PAGEID 13. "Administrator" is defined as the "Employer," and "Employer" is defined as BBU. Plan, §§1.4, 1.18. The definition of the term "Fiduciary" tracks the language of §1002(21)(A). Plan, §1.19. The term "Trustee" is defined as the person or entity named as trustee in the Plan (Schmelzer and Cook), or in any separate trust forming a part of the Plan. Plan, §1.52. The Plan Summary also identifies Cook and Schmelzer as the Plan's Trustees. PAGEID

121.

The Employer (BBU) is identified as being the Plan Administrator. Plan, §2.2; Plan Summary, PAGEID 121. The Plan provides that "[b]enefits under this Plan will be paid only if the Administrator decides in its discretion that the applicant is entitled to them." Plan, §2.3. The Administrator is charged with the duties of the general administration of the Plan, including: "(a) the discretion to determine all questions relating to the eligibility of Employees to receive benefits under the Plan;" ... "(c) to compute, certify, and direct the Trustee with respect to the amount and the kind of benefits to which any Participant shall be entitled hereunder; [and] (d) to authorize and direct the Trustee with respect to all discretionary or otherwise directed disbursements from the Trust." Plan §2.3(a), (c) and (d).

The Plan states that the Trustee shall have the responsibility to manage and control the Plan assets, and "[a]t the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants[.]" Plan §7.1(a)(1) and (2). The Plan further provides, "At the direction of the Administrator, the Trustee shall, from time to time, in accordance with the terms of the Plan, make payments out of the Trust Fund. The Trustee shall not be responsible in any way for the application of such payments." Plan, §7.4. The Plan also states, "The Employer agrees to indemnify and hold harmless the Trustee against any and all claims, losses, damages, expenses and liabilities the Trustee may incur in the exercise and performance of the Trustee's power and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct." Plan, §7.9.

The Plan also permits the Employer to appoint a custodian of Plan assets. Plan, §7.12.

> A custodian has the same powers, rights and duties as a nondiscretionary Trustee. Any reference to a nondiscretionary Trustee also is a reference to a custodian unless the context of the Agreement indicates otherwise. A limitation of the Trustee's liability by Plan provision also acts as a limitation of the custodian's liability. The Custodian will be protected from any liability with respect to actions taken pursuant to the direction of the Trustee, Plan Administrator, the Employer, an investment Manager, a Named Fiduciary or other third party with authority to provide direction to the Custodian.

Plan, §7.12.

The Plan contains a procedure for amending the Plan. Although the Employer has the right to amend the Plan, "any amendment which affects the rights, duties or responsibilities of the Trustee or Administrator may only be made with the Trustee's or Administrator's written consent." Plan, §8.1(a).

A resolution adopting Huntington as a Trustee/Custodian of the Plan was executed on March 9, 2011, by Schmelzer as a vice president of BBU. Complaint, Ex. C. The service agreement between Huntington and BBU, signed by a representative of Huntington and Schmelzer on March 9, 2011, states that the services provided by Huntington will include active investment management, custodial services and trustee services. Complaint, Ex. B, PAGEID 127. The agreement states that "Huntington Bank will process distributions pursuant to written instructions." PAGEID 127. The agreement further states:

> To fulfill its responsibilities, Huntington Bank needs accurate and complete data regarding plan participants in pay status including the dates when a series of payments begins and stops.

> By signing this form, you are agreeing that Huntington Bank will not begin making a series of payments in the absence of this data, that it may rely on the data furnished by the entity responsible and it has no responsibility for verifying their accuracy.
>
> Further, the Plan Sponsor releases and holds Huntington Bank harmless from any liability, cost or expense resulting from its compliance with these instructions regarding accuracy and completeness of data.

Ex. B, PAGEID 128.

An amendment to the Plan concerning loans to participants was added by a resolution dated December 28, 2012, which was signed by Cook as a vice president of BBU. PAGEID 78-80. The amendment provides that the Trustee may, in the Trustee's discretion, make loans to participants and beneficiaries if certain requirements are met, including adequate security for the loan.[2] Amendment, §10.2(a). The amount of the loan cannot exceed the present value of the participant's vested accrued benefit. Amendment, §10.2(c). Exhibit D to the complaint includes a modification of the plan summary which addresses loans from the Plan. The summary provides that the Plan Administrator (BBU) determines whether the loan request meets Plan requirements. PAGEID 136.

Exhibit D includes a document describing the loan program (presumably the "separate written document" required under §10.2(f) of the amendment, see PAGEID 79). PAGEID 138-140. This document provides that the "Plan Administrator [BBU] is authorized to

---

[2] Because the amendment document was not signed by Huntington, and because there are no factual allegations in the complaint indicating that Huntington otherwise gave its written consent to the amendment as required by Plan §8.1(a), the use of the term "Trustee" here cannot refer to Huntington. Schmelzer and Cook are the only other persons identified as a "Trustee" of the Plan.

11

administer the Participant loan program." PAGEID 139. Loan applications are made to the Plan Administrator, which determines whether the participant qualifies for a loan, the term of the loan, and the amount of security required for the loan. PAGEID 139. The document further states, "If the loan remains in default, the Plan Administrator will offset the Participant's vested account balances by the outstanding balance of the loan to the extent permitted by law." PAGEID 140. Also attached to the complaint as Exhibit D is a letter to Kathy Chapin at Huntington from James L. McLain II, CPA, which includes an application by Cook dated December 28, 2012, for a participant loan of $50,000.00 from the Plan. Complaint, Ex. D. The loan was secured by Cook's vested interest in the Plan. PAGEID 135.

Exhibit F is a statement of Cook's Plan benefits for the period from January 1, 2013, through December 31, 2013, showing the distribution of $359,325.20 from the account and a zero balance at the end of the period. PAGEID 149. Exhibit G is a letter dated June 1, 2015, to Mr. McLain from Kathleen Chapin at Huntington, noting that Huntington was requesting the return of $46,986.45 plus interest, the amount Cook still owed on the loan, "that was erroneously distributed to Mr. Cook as part of a lump sum payment under the Plan." PAGEID 150. Exhibit H is a letter to Cook from Ms. Chapin, dated August 31, 2015, reminding him that he was still responsible for his loan balance which, with interest, was then $51,729.13. PAGEID 151.

4. Sufficiency of the Complaint

The above documents indicate that, although Huntington was a Plan fiduciary insofar as it provided investment advice, it also

acted in a purely ministerial capacity as a "custodian" of funds (described in the Plan as nonfiduciary trustee) when disbursing Plan funds at the instruction of BBU, the Plan Administrator. Plan §§7.1(a)(1) and (2), 7.4, and 7.12. When acting as a nonfiduciary custodian, Huntington meets the requirements for an entity which is not a fiduciary under the Department of Labor regulations. See §2509.75-8(D-2). Although plaintiffs note that §1.4 of the Plan permits the Administrator (BBU) to designate another person or entity to administer the Plan, there are no allegations in the complaint that BBU ever designated Huntington as a Plan administrator.

Huntington's agreement with BBU states that "Huntington Bank will process distributions pursuant to written instructions." PAGEID 127. Plaintiffs note that the complaint does not allege that Huntington distributed the balance of Cook's account upon the instructions of BBU or someone authorized by BBU to request distributions from the Plan. However, such an allegation would not further plaintiffs' breach of fiduciary duty claim. More to the point, even assuming arguendo that Huntington would have acted in a fiduciary capacity in making a distribution from the Plan funds on its own initiative, without instructions from the Plan Administrator, the complaint contains no allegations indicating that Huntington distributed the funds in Cook's account without instructions from BBU or some other agent authorized by BBU to request the distribution. It is plaintiffs' obligation to include factual allegations in the complaint which are sufficient to state a claim for relief.

Plaintiffs' allegation that Huntington breached a fiduciary

13

duty by failing to withhold the amount owed on Cook's loan also conflicts with the Plan terms. The Plan, Section §8.1(a), requires that any amendment which affects the duties or responsibilities of a Trustee may only be made with the Trustee's written consent. There are no allegations in the complaint or information in the exhibits indicating that Huntington agreed in writing to the Plan amendment authorizing loans from the Plan or otherwise assumed any responsibilities for managing the loan program. Although plaintiffs alleged in the complaint, ¶15, that Huntington extended a loan to Cook, the Plan documents show that loan applications are made to the Plan Administrator (BBU), which determines whether the participant qualifies for a loan, the term of the loan, and the amount of security required for the loan. PAGEID 139. The Plan documents also establish that it is the Plan Administrator which "will offset the Participant's vested account balances by the outstanding balance of the loan to the extent permitted by law." PAGEID 140. The Plan provisions give Huntington no responsibility to calculate the balance owed by Cook or to ensure that adequate collateral remained in his account.

Plaintiffs now ingeniously characterize the disbursal of funds by Huntington to Cook as an unauthorized loan. However, there are no facts alleged in the complaint which would indicate that Huntington regarded the disbursal of funds from Cook's account as a loan, or that any other indicia of a loan, such as the execution of a promissory note and an assignment of security, were completed as part of the distribution of funds. Calling the distribution of the funds in Cook's account a loan would contradict the Plan provisions, which give the Plan Administrator (BBU) the sole

14

authority to approve loans from the Plan. PAGEID 139. Construing every mistaken payment of money from a plan fund as an illegal loan resulting in fiduciary liability would also conflict with and considerably undermine the regulations and other authorities which do not assign fiduciary responsibility to ministerial functions such as the payment of claims.

Plaintiffs also note the June 1, 2015, letter from Kathleen Chapin at Huntington to Mr. McLain, which stated that the amount due on the Cook loan "was erroneously distributed to Mr. Cook as part of a lump sum payment under the Plan[.]" See PAGEID 150. Plaintiffs suggest that this language somehow constitutes an admission by Huntington that it was responsible as a fiduciary for the error. This argument reads too much into the language of the letter, which merely states that the funds were "erroneously distributed" but does not indicate which person or entity was responsible for the error. The letter does not admit that the error was on Huntington's part, nor does it concede fiduciary liability. The complaint contains no facts explaining why Huntington sent this letter over one-and-a-half years after the distribution of Cook's account. Plaintiffs' argument is further weakened by the agreement between BBU and Huntington, which provides that Huntington may rely on data furnished by BBU in fulfilling its responsibilities, and that BBU "holds Huntington Bank harmless from any liability, cost or expense resulting from its compliance with these instructions regarding accuracy and completeness of data." PAGEID 128. Even assuming that Huntington committed some error in disbursing Cook's account funds due to circumstances not alleged in the complaint, that alone is

15

insufficient to allege that Huntington was acting as a fiduciary in disbursing the funds. See Flacche, 958 F.2d at 734 (company which performed only ministerial functions for the plan was not acting as a fiduciary when it mistakenly calculated plaintiff's retirement benefits).

Plaintiffs' conclusory allegations that Huntington is a Plan trustee and fiduciary, that Huntington exercises discretionary authority and control over the distribution of Plan assets, and that Huntington breached a fiduciary duty by not withholding the amount still owed by Cook on the loan are insufficient to factually plead a claim for breach of fiduciary duty by Huntington, particularly in light of the conflicting language of the Plan and other documents attached to the complaint. Count 1 fails to state a claim for which relief may be granted.

B. Breach of Co-Fiduciary Duty

1. Legal Standards

Under 29 U.S.C. §1105(a), a "fiduciary with respect to a plan" is liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1105(a)(1)-(3).

Liability under §1105(a) requires that the defendant be a fiduciary.  §1105(a)("a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan").  Subsections (a)(1) and (3) also require that the defendant had actual knowledge that the other person is a fiduciary with respect to the plan, that the defendant knowingly participated in the act constituting the breach, or undertook to conceal the breach by the co-fiduciary, and that the defendant knew that the co-fiduciary's act was a breach. See Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983). The plaintiff must adequately plead the existence of the underlying fiduciary breach by a co-fiduciary with respect to the same plan. In re Huntington Bancshares Inc. ERISA Litigation, 620 F.Supp.2d 842, 856 (S.D. Ohio 2009).

2. Plaintiffs' Claim - Count 2

In Count 2 of the complaint, plaintiffs allege that Huntington had knowledge of the loan to Cook, a co-fiduciary, knowledge of a breach of fiduciary duty by Cook, and that Huntington is liable for that breach under 29 U.S.C. §1105(a)(1)-(3) as a co-fiduciary. These allegations basically track the language of §1105(a), and contain little in the way of supporting facts.  Plaintiffs contend that in 2013, Cook requested to withdraw his benefits from the Plan in a lump sum payment upon his separation from his employment, and that Huntington distributed the sum of $359,325.20 to Cook on June 3, 2013.  Complaint, ¶ 20-21.  Plaintiffs allege in Count 2 of the complaint that Huntington had knowledge of the loan to Cook, a co-fiduciary.  Complaint, ¶ 34.  Plaintiffs further allege that Huntington had knowledge of a breach of fiduciary duty by Cook, and

17

that Huntington is liable for that breach under 29 U.S.C. §1105(a)(1)-(3) as a co-fiduciary.

First, the complaint fails to allege a claim for breach of co-fiduciary duty because, as discussed above in relation to Count 1, the complaint fails to allege sufficient facts to show that Huntington was acting as "a fiduciary with respect to a plan" as required under §1105(a), in disbursing account funds from the Plan, or that Huntington had any role in the management of the Plan Participant Loan Program. The Plan documents show that Huntington had no responsibility to administer the requirements of the loan program, and that Huntington acted in a purely ministerial capacity as a custodian when distributing Plan funds in accordance with the instructions of the Plan Administrator. The complaint contains no facts describing the circumstances surrounding Cook's request for Plan funds, nor does it allege to which entity Cook made his request for funds. The complaint includes no allegation that Huntington did not receive instructions from an authorized person to distribute Cook's funds. The lack of facts in the complaint describing how Huntington breached any fiduciary duty in distributing Cook's account balance and the conflicting Plan documents are fatal to plaintiffs' §1105(a) claims.

Liability under §1105(a) also requires that Cook breached a fiduciary duty owed by him to the Plan. The Plan states that Cook is a "Trustee" of the Plan. However, the complaint does not allege how Cook was acting in his capacity as a Plan Trustee rather than as a Plan participant in requesting a distribution from his account. The complaint contains only conclusory allegations that Cook breached a fiduciary duty, and gives no explanation or

description of the nature of that duty or how it was breached.

Liability under §1105(a)(1) and (3) requires that Huntington was aware of a breach of fiduciary duty by Cook. The complaint alleges that Huntington was aware of the Plan's loan to Cook, which is substantiated by McLain's letter requesting the distribution of the loan proceeds to Cook. However, the complaint does not allege that Huntington was aware that Cook was a Plan Trustee, or that Huntington knew what, if any, duties that Cook owed to the Plan as a Plan Trustee. The conclusory allegations in the complaint concerning Huntington's knowledge contain no facts explaining how Huntington knew about the unspecified breach of fiduciary duty by Cook, or why Huntington should have known that any of Cook's actions, including his request for distribution of his Plan assets, constituted a breach of Cook's fiduciary duties.

The complaint fails to state a claim under §1105(1) because it contains no facts indicating how Huntington knowingly participated in any act by Cook which constituted a breach of Cook's fiduciary duty, how Huntington undertook to conceal a breach of fiduciary duty by Cook, or how Huntington breached a fiduciary duty to the Plan which enabled Cook to commit his own breach of fiduciary duty to the Plan. By failing to state sufficient facts to describe how Huntington had knowledge of a breach of fiduciary duty by Cook, the complaint also fails to state a claim under §1105(a)(3), which would impose liability only if Huntington, while acting as a fiduciary, had knowledge of a breach of fiduciary duty by Cook and failed to make reasonable efforts under the circumstances to remedy the breach.

In summary, the complaint does not state a claim under

§1105(a), and the motion to dismiss that claim is granted.

## C. Removal of Huntington as a Fiduciary

In Count 3, plaintiffs seek to remove defendant as a Plan fiduciary pursuant to 29 U.S.C. §1109(a). Complaint, ¶¶ 38-39. Because the complaint fails to state a claim for relief for breach of fiduciary duty, it also fails to advance grounds for removal of Huntington as a fiduciary. In any event, Huntington has indicated in it's motion to dismiss that it no longer serves as the trustee of the Plan. Doc. 3, p. 11, n. 2. Therefore, this claim for relief is probably moot.

## D. Claim for Attorney's Fees

Count 4 of plaintiffs' complaint is a claim for attorney's fees. Technically, this is not another substantive theory of liability to be advanced as a separate count in the complaint. Rather, it is a component of the prayer for relief. Because plaintiffs have not prevailed on the motion to dismiss, plaintiffs are not entitled to attorney's fees.

## III. Conclusion

In accordance with the foregoing, Huntington's motion to dismiss pursuant to Rule 12(b)(6) (Doc. 3) is granted.

Date: June 29, 2017        s/James L. Graham
                           James L. Graham
                           United States District Judge